```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
KAYLIL JOHNSON, an infant under the
age of 18, by his mother and natural
guardian, SHANIK JOHNSON,

                    Plaintiffs,        MEMORANDUM & ORDER
                                       09-CV-4746(JS)(MLO)
        -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT and OFFICERS
JOHN DOE 1 THROUGH 10,
                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiffs:     Elliot F. Bloom, Esq.
                    114 Old Country Road, Suite 308
                    Mineola, NY 11501

For Defendants:     Diane C. Petillo, Esq.
                    One West Street
                    Mineola, NY 11501
```

SEYBERT, District Judge:

Shanik Johnson, mother and natural guardian of Plaintiff, brought this action on behalf of her twelve year-old son, Plaintiff Kaylil Johnson, against the County of Nassau, Nassau County Police Department and Officers John Doe 1 through 10 (collectively "Defendants"). Plaintiff asserts causes of action based on 42 U.S.C. § 1983 and New York state law. Pending before this Court is Defendants' Rule 12(b)(6) motion to dismiss. For the foregoing reasons, that motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND[1]

On or about October 30, 2008 at around 7:10 a.m., Plaintiff was in the car with his parents on the way to school. (Compl. ¶ 12.) At some point, approximately twenty police officers stopped the vehicle, drew their guns, and asked Plaintiff to exit the car. (Id. ¶ 13.) Before Plaintiff could get out, one officer opened the door, grabbed Plaintiff's arm, and physically removed him from the car. (Id.)

The officers opened Plaintiff's backpack and searched its contents. (Id. ¶ 14.) The officers also searched Plaintiff's pockets and asked Plaintiff his age and relationship to the other people in the car. (Id. ¶¶ 14-15.) Next, the officers asked Plaintiff's parents to exit the car and similarly questioned them. (Id. ¶ 16.) The officers then opened and inspected the vehicle's trunk. (Id. ¶ 17.)

One hour later, the officers finally let Plaintiff and his parents leave. (Id. ¶ 16.) Due to this incident, Plaintiff claims that he suffers headaches and nausea. (Id. ¶ 18.)

Based on these facts, Plaintiff asserts that: (1) Defendants violated his Fourth and Fourteenth Amendment rights by searching his backpack, his pockets, and the trunk of his parents' car, (Id. ¶ 22.); (2) Defendants violated his Fourth

---

[1] The Court presumes the following facts as true for this motion's purposes.

and Fourteenth Amendment rights by using excessive force against him, (Id. ¶ 25.); (3) Defendants failed to intervene to prevent these constitutional violations, (Id. ¶ 28.); and (4) Nassau County failed to train and supervise its employees. (Id. ¶¶ 68-70.) Plaintiff also asserts state law claims for battery, assault, intentional infliction of emotional distress, negligent hiring/training/supervision/retention, and negligence. (Id. ¶¶ 32-76.)

## DISCUSSION

### I. Standard of Review

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Ashcroft). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). Id. Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

II.     Plaintiff's Search and Seizure Claims

Plaintiff first cause of action alleges a § 1983 claim based on improper search and seizure.[2] In this regard, Plaintiff alleges that Defendants improperly: (1) stopped his parents' car; (2) interrogated him for an hour; (3) searched his backpack and pant pockets; and (4) searched his parents' car.

As an initial matter, Plaintiff's Complaint alleges that Defendants' search and seizure was "without probable cause." (Compl. ¶ 22.) But, as Plaintiff's Opposition brief appears to concede, this is not the appropriate standard. See Pl. Opp. Br. at 7-10. Even construed liberally, Plaintiff alleges that Defendants engaged in an investigative stop and search incident to this stop. Accordingly, Defendants needed only reasonable suspicion to stop Plaintiff, not probable cause, which applies to arrests.[3] It follows then that, to plead an

---

[2] As a technical matter, Plaintiff's Complaint asserts a claim only for an improper seizure, presumably based on the stop of his parents' car, and the one hour interrogation he subsequently endured. (Compl. ¶¶ 22-23.) Construed liberally, however, Plaintiff also appears to assert claims based on an improper search of his backpack, the pockets of his pants, and his parent's trunk. (Compl. ¶¶ 14-17, 21.) Plaintiff does not appear pro se, so the Court has no obligation to read his Complaint liberally. Nevertheless, because the parties briefed the non-existent search claim, the Court addresses it.

[3] See Devenpeck v. Alford, 543 U.S. 146, 153, 125 S. Ct. 588, 593-94, (2004); United States v. Place, 462 U.S. 696, 710, 103 S. Ct. 2637, 2646, 77 L. Ed. 2d 110 (1983); Dunway v. New York, 442 U.S. 200, 207-08, 99 S. Ct. 2248, 2254, 60 L. Ed. 2d 824 (1979).

4

improper seizure claim, Plaintiff needed to plead facts suggesting that Defendants lacked reasonable suspicion. See Allen v. City of N.Y., Nos. 03-CV-1668, 03-CV-3869, 03-CV-5323, 03-CV-4646, 2006 WL 1071576, at *3 (E.D.N.Y. Apr. 21, 2006) (plaintiffs pled a lack of probable cause by alleging that their appearances did not match the victim's descriptions). Plaintiff failed to do so. Instead, Plaintiff pled only a conclusory, improper allegation that the Defendants lacked probable cause. (Compl. ¶ 22). So the improper seizure claim must be dismissed.

Plaintiff's improper search claims deserve more consideration. During an investigative stop, police officers are entitled to conduct a warrantless stop-and-frisk if: (1) the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense; and (2) the police officer reasonably suspects that the person stopped is armed and dangerous. Evans v. Solomon, 681 F.Supp.2d 233, 247 (E.D.N.Y. 2010). Here, however, Plaintiff does not allege a stop-and-frisk. Instead, Plaintiff alleges that, upon being removed from the car, the officers "immediately searched" his book bag while it "remained on the infant Plaintiff's back," and "contemporaneously" searched the "pockets of his pants." (Compl. ¶¶ 14, 15).

There is conflicting case law concerning whether police officers can search a book bag during an investigative

5

stop.  One Second Circuit district court has held that such searches are improper, because an investigative "pat-down . . . is limited to outer clothing."  Tarhaqa Allen v. N.Y.C. Police Dept., 07-CV-8682, 2010 WL 1790429, *7 (S.D.N.Y. 2010).  But other courts have disagreed.  The District of Washington, for instance, has held that a book bag search was reasonable as a matter of law, as a "measure[] clearly taken to ensure [the plaintiff] was not carrying a gun."  Nash v. Vancouver Police Dept., 10-CV-5055, 2010 WL 2720842, *7 (W.D. Wash. 2010).  The Court need not resolve this dilemma.  According to Plaintiff, the officers did more than just search his bag.  They also "removed books from the bag and leafed through [their] pages." (Compl. ¶ 14).  And they did so, apparently, without first frisking or patting-down Plaintiff.  (Compl. ¶ 14) (book bag search was "immediate[]" upon Plaintiff's removal from car). Taking these allegations together, it is plausible to infer that the officers were not searching for weapons when they searched Plaintiff's bag and started "leaf[ing]" through the pages of Plaintiff's books.  Thus, this illegal search claim survives Plaintiff's motion to dismiss.  Defendants may, however, reargue the underlying legal issues should this case reach summary judgment.

Likewise, Plaintiff's search claim concerning the "pockets of his pants" also survives Defendants' motion.  Before

searching pockets during an investigative stop, officers must first pat-down the suspect. See Sibron v. New York, 392 U.S. 40, 65, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) (officer conducted improper search when he "thrust his hand into Sibron's pocket" with "no attempt at an initial limited exploration for arms"); Tarhaqa Allen, 2010 WL 1790429 at *7. Here, accepting Plaintiff's allegations as true, the officers apparently failed to do so. Thus, accepting Plaintiff's allegations as true, the officers conducted an illegal search.

Plaintiff's claims stemming from the trunk search do not fare as well. Plaintiff's Opposition concedes that Plaintiff was only a passenger in his parents' car, (Pl. Opp. Br. at 9), and therefore does not have standing to sue for the trunk search.[4]

Accordingly, Plaintiff's first cause of action is DISMISSED IN PART. Only Plaintiff's illegal search claims deriving from the search of his book bag and pockets survive Defendant's motion.

---

[4] To establish standing, a plaintiff must show a "legitimate expectation of privacy" in the searched area. United States v. Smith, 621 F.2d 483, 486 (2d Cir. 1980). A passenger, however, has no legitimate expectation of privacy in a car he does not own. See Rakas v. Illinois, 439 U.S. 128, 148, 99 S. Ct 421, 433, 58 L. Ed. 2d 387 (1978) (finding no "legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers"). Here, Plaintiff was merely a passenger in his parents' car. Consequently, Plaintiff lacks standing to sue for the alleged trunk search.

III.     Plaintiff's Excessive Force Claims

Plaintiff's second cause of action asserts a § 1983 excessive force claim. To plead such a claim, Plaintiff must allege that (1) Defendants used an "objectively sufficiently serious or harmful" force; and (2) the use of force <u>proximately caused</u> his injuries.[5] Proximate cause requires connecting the force used with the plaintiff's injury. <u>See</u> <u>Gibeau</u>, 18 F. 3d at 110. Thus, for example, a police officer does not proximately cause a wrist injury by hitting a suspect over the head. <u>See</u> <u>Gibeau</u>, 18 F. 3d at 110 (finding no excessive force claim). In addition, Plaintiff can obtain no relief for purely psychological injuries, even if Plaintiff establishes proximate cause. <u>See</u> <u>Russo v. Port Auth.</u>, No. 06-CV-6389, 2008 WL 4508558, at *5 (E.D.N.Y. Sept. 30, 2008) (no relief for headache and post traumatic stress disorder); <u>Roundtree v. City of N.Y.</u>, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("'emotional pain and suffering'" insufficient to support an excessive force claim).

Here, Plaintiff alleges only a single act of physical force: being grabbed by the arm and physically removed from his parents' car. (Compl. ¶ 13.) But Plaintiff pleads no facts to proximately connect that force to the injuries he claims,

---

[5] <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989); <u>Gibeau v. Nellis</u>, 18 F. 3d 107, 110 (2d Cir. 1994); <u>Perkins v. Brown</u>, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003).

stomach aches and headaches. (Id. ¶ 18). Nor, based on the facts pled, do any reasonable inferences suggest proximate cause. See Gibeau, 18 F. 3d at 110 (finding defendant did not proximately cause plaintiff's wrist injury by hitting him over the head with a flashlight). Rather, the only reasonable inference is that Plaintiff's stomach aches and headaches are psychological in nature, and thus non-compensable. See Roundtree, 778 F. Supp. at 622.

Thus, Plaintiff's second cause of action is DISMISSED.

## VI. Failure to Intervene Claim

Plaintiff's third cause of action alleges that several Defendants violated their duty to intervene by watching the other Defendants violate Plaintiff's "constitutional rights," while doing nothing to stop them. (Compl. ¶ 27.) The only constitutional rights claims remaining concern the illegal search. Thus, any failure to intervene must be predicated on these alleged violations.

In order to allege a failure to intervene claim, the defendants must have had "a realistic opportunity . . . to prevent the harm from occurring." Cerbelli v. City of N.Y., No. 99-CV-6846, 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008) (quoting Smith v. P.O. Canine Dog Chas, No. 02-6240, 2004 WL 2202564, at *9 (S.D.N.Y. Sept. 28, 2004)). For example, where a police officer fired his gun multiple times in a row, other

police officers could not have reasonably intervened in the short window of time between shots. See id. Here, Plaintiff concedes that the officer's actions were immediate. (Compl. ¶¶ 14, 15.) The Complaint states that the officer "immediately" searched his backpack and "contemporaneously" stuck his hand in Plaintiff's pocket. (Id.) The other Defendants therefore had no reasonable opportunity to intervene.

Thus, Plaintiff's third cause of action, alleging a failure to intervene, is DISMISSED.

V. Assault & Battery Claims

Plaintiff's fourth and fifth causes of action allege common law assault and battery. To plead an assault, Plaintiff must allege "physical conduct placing the plaintiff in imminent apprehension of harmful contact." Fugazy v. Corbetta, 34 A.D.3d 728, 729, 825 N.Y.S.2d 120, 122 (2d Dep't 2006). To plead a battery, Plaintiff must allege "bodily contact, made with intent, and offensive in nature." Id.

In moving to dismiss, Defendants argue that "[w]hen such claims are alleged against police officers, plaintiff must also prove the officer's conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties." (Def. Br. at 14). In this regard, Defendants cite Nimely v. City of New York, 414 F.3d 381, 391 (2d Cir. 2005) which, in

10

turn, relied upon N.Y. Penal Law § 35.30(1). This citation daisy-chain makes Defendants' reliance on Nimely somewhat problematic. Nimely was decided after a jury verdict, not on a motion to dismiss. So its statement about what a plaintiff must "prove," at trial, does not necessarily translate to what a plaintiff must plead in a complaint. Likewise, N.Y. Penal Law § 35.30(1) affords law enforcement officers the affirmative defense of justification to physical force "he or she reasonably believes to be necessary to effectuate [an] arrest, prevent [an] escape from custody, or in self-defense or to defend a third person." At the motion to dismiss stage, the Court generally does not consider affirmative defenses. And, in any event, the Complaint's allegations do not suggest that the Defendants acted to arrest Plaintiff, prevent his escape, or to defend themselves or third persons. So § 35.30(1)'s standards, which Nimely incorporates, do not necessarily apply to this case.

That being said, the Court construes Defendants' reliance on Nimely as an effort to invoke the affirmative defense of justification at this stage. Parties can assert affirmative defenses in Rule 12(b)(6) motions "as long as the defense is based on facts appearing on the face of the complaint." Benzman v. Whitman, 523 F.3d 119, 125 (2d Cir. 2008). Here, because Plaintiff's allegations concern an investigative stop, not an arrest or escape attempt, the proper

11

framework to assess a justification defense can be found in New York Penal Law § 35.05(1). That statute authorizes conduct "performed by a public servant in the reasonable exercise of his official powers, duties or functions."

The Complaint does not plead any facts to support Defendants' justification defense. With respect to the alleged assault, Plaintiff pleads no facts to suggest that it was a "reasonable exercise" of police powers to have twenty officers point their guns at "the vehicle the infant Plaintiff was travelling in," or order Plaintiff "with guns drawn" and "without properly identifying themselves as [police] officers" to exit the vehicle. (Compl. ¶ 13.) Similarly, with respect to the alleged battery, the Complaint pleads no facts to suggest that it was "reasonable" for the police to "physically grab[] the infant plaintiff by his arm and forcibly pull[]" him from the car, "before the infant plaintiff had the opportunity to comply" with an officer's order to leave the car under his own power. (Id.) So, although Defendants may be able to present a compelling justification defense by summary judgment or trial, this defense does not entitle them to a Rule 12(b)(6) dismissal.

Defendants also argue that Plaintiff's claims fail because assault and battery claims against law enforcement officers require "excessive force." (Def. Br. at 15). Defendants cite their sources correctly. See Sheikh v. City of

12

New York, Police Dept., 03-CV-6326, 2008 WL 5146645, at *14 (E.D.N.Y. 2008); Marrero v. City of New York, 33 A.D.3d 556, 557-558, 824 N.Y.S.2d 228, 230 (1st Dep't 2006); see also Akande v. City of New York, 275 A.D.2d 671, 672, 713 N.Y.S.2d 341, 343 (1st Dep't 2000). But, again, the procedural posture of these cases makes Defendants' reliance on them somewhat problematic. Sheikh and Marrero both came down on summary judgment, while Akande is a post-trial decision. So these cases do not support the proposition that a Plaintiff must plead facts demonstrating excessive force simply to plead a common law assault or battery claim against a law enforcement officer.

In addition, although these cases impose an "excessive force" burden, they do not define the term "excessive force." And other New York cases apply a similar framework without using those exact words. See Lorenson v. State, 249 A.D.2d 762, 764, 671 N.Y.S.2d 790, 792 (3d Dep't 1998) (in an alleged assault and battery during an investigative stop, plaintiff needed to show that officers used force that was "more than was necessary under all the circumstances"). So it is unclear, at best, whether these cases concur with federal constitutional law in requiring "excessive force"-based claims to include a physical injury.

Considering all these factors, the Court declines to find that Plaintiff has failed to plead assault and battery as a

matter of law. Plaintiff's fourth and fifth causes of action are not dismissed.[6]

VI. Intentional Infliction of Emotional distress

Plaintiff's sixth cause of action asserts an intentional infliction of emotional distress claim. (Compl. ¶¶ 52-59.) However, under New York law, intentional infliction of emotional distress is a "last resort" that cannot be invoked "when the conduct complained of falls within the ambit of another tort." Rivers v. Towers, Perrin, Forster & Crosby Inc., 07-CV-5441, 2009 WL 817852, at *9 (E.D.N.Y. 2009); see also Deronette v. City of New York, 05-CV-5275, 2007 WL 951925, at *5 (E.D.N.Y. 2007). Here, Defendants' alleged conduct falls entirely "within the ambit" of assault or battery. It follows then that Plaintiff's intentional infliction of emotional distress claim must be dismissed.

---

[6] Plaintiff also asserts these claims against Nassau County and the Nassau County Police Department, under a respondeat superior theory. Defendants did not brief the issue of municipal liability for Plaintiff's assault and battery claims. And, under New York law, employers can sometimes be held liable under respondeat superior for an intentional tort an employee commits, "if the employee was acting within the scope of the employment at the time of the commission of the tort." Ramos v. Jake Realty Co., 21 A.D.3d 744, 745, 801 N.Y.S.2d 566, 567 (1st Dep't 2005). Given this law, and Defendants' failure to brief the issue, the Court cannot dismiss the assault and battery claims against Nassau County. Defendants are, however, invited to bring any relevant authority to the Court's attention should this case reach summary judgment.

## VII. Negligent Hiring/Training/Supervision/Retention

Plaintiff's seventh cause of action alleges "Negligent Hiring/Training/Supervision/Retention" against Nassau County. It is unclear whether Plaintiff asserts this cause of action under § 1983, state law, or both. In either case, this cause of action is completely conclusory. Plaintiff pleads no facts to suggest that Nassau County acted negligently in hiring, training, supervising, or retaining its personnel. Indeed, the Complaint's only factual allegations concern the one incident that happened to him. And "more . . . than the single incident [is] necessary" to plead municipal liability predicated on a failure to supervise or train. Sango v. City of N.Y., 83-CV-5177, 2989 WL 86995, at *8 (E.D.N.Y. July 25, 1989).

## VIII. Negligence

Plaintiff's eighth and final cause of action alleges common law negligence. It is unclear from Plaintiff's Complaint whether he asserts this claim against the officers who engaged in the allegedly wrongful conduct, the officers who observed but failed to intervene, or both. But under each scenario, Plaintiff's claim fails.

To the extent that Plaintiff asserts this claim against the officers who allegedly wronged him, his negligence claim fails because the Complaint clearly alleges intentional conduct. And intentional conduct is not negligence. See Gomez

15

v. Singh, 309 A.D.2d 620, 620, 767 N.Y.S.2d 67, 68 (1st Dep't 2003); Joshua S. by Paula S. v. Casey, 206 A.D.2d 839, 839, 615 N.Y.S.2d 200, 200 (4th Dep't 1994).

To the extent that Plaintiff asserts this claim against the officers who observed the conduct but failed to stop it, Plaintiff's negligence claim deserves a little more consideration. As long as there is a reasonable opportunity to intervene, police officers have "an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." Diaz v. City of N.Y., No. 00-CV-2944, 2006 WL 3833164, at *9 (E.D.N.Y. Dec. 29, 2006). Third parties, however, do not have a duty to intervene where the negligent act occurs in a matter of seconds. Compare Haber v. Precision Sec. Agency, 24 Misc. 3d 1229(A), 4, 899 N.Y.S.2d 59 (Kings Co. 2009) (finding reasonable opportunity to intervene where the verbal altercation lasted at least 30 seconds before the assault even began), with Scotti v. W.M. Amusements, Inc., 226 A.D.2d 522, 640 N.Y.S. 617 (2nd Dep't 1996) (finding no opportunity to intervene where, within seconds, the brief oral exchange and assault had already happened). And here, Defendants had no opportunity to intervene.

According to Plaintiff, once the Defendants stopped the car they "immediately" ordered him to leave the vehicle.

16

(Compl. ¶ 13.) But "before" Plaintiff "had an opportunity to comply" with this instruction, an officer physically grabbed him and pulled him from the back seat. (Compl. ¶ 13.) The Defendants then "immediately" searched his book bag and "contemporaneously" searched his pockets. (Compl. ¶¶ 14-15.) Even drawing reasonable inferences in Plaintiff's favor, Plaintiff has alleged conduct that took place entirely within a matter of seconds. It is difficult to fathom how an officer could have realistically prevented Plaintiff's forcible removal from the car, if it happened so quickly that Plaintiff was unable to comply with a request that he leave the car himself. And, as Plaintiff does not claim that he struggled or resisted the police in any way, it is likewise difficult to see how the physical act of removing him could have taken more than a few seconds. Then, the remaining conduct happened "immediately" thereafter. (Compl. ¶¶ 14-15) (pockets search was "contemporaneous[]" with "immediate[]" book bag search.) It follows then that the Defendants who did not directly participate in the conduct had no reasonable opportunity to stop it, and thus did not act negligently. So Plaintiff's negligence claim must be DISMISSED.

IX. Redundant Claims

Plaintiff names the Nassau County Police Department as a Defendant. The Police Department, however, is an

17

"administrative arm" of the municipality and therefore cannot be separately sued. Jackson v. County of Nassau, No. 07-CV-0245, 2010 WL 335580, at *5 (E.D.N.Y. Jan. 22, 2010). Consequently, the claims against the Nassau County Police Department are DISMISSED as redundant.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is GRANTED IN PART AND DENIED IN PART. Plaintiff's first cause of action is dismissed against Nassau County, the Nassau County Police Department, and to the extent it is predicated on an unlawful seizure. Plaintiff's second, third, sixth, seventh and eighth causes of action are dismissed in their entirety. Plaintiff's fourth and fifth causes of action are dismissed against the Nassau County Police Department, but otherwise survive. The Clerk of the Court is ORDERED to terminate the Nassau County Police Department as a defendant.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September  27 , 2010
         Central Islip, New York